**Christopher WILSON, Plaintiff**

v.

**Stephen LYONS, et al., Defendants**

**No. CIV. 02–218–P–H.**

United States District Court,
D. Maine.

July 9, 2003.

---

Thomas J. Connolly, Portland, ME, for Christopher Wilson, plaintiff.

Edward R. Benjamin, Jr., Thompson & Bowie, Portland, ME, for Stephen Lyons, Sean Lally, defendants.

## ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

The United States Magistrate Judge filed with the court on May 22, 2003, with copies to counsel, his Recommended Decision on Defendants' Motion for Summary Judgment. Docket No. 12. The plaintiff filed an objection to the Recommended Decision and a request for oral argument on June 6, 2003. Oral argument was held on July 8, 2003. I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, with one observation and one exception, and determine that no further proceeding is necessary.

■ First, on Counts 7 and 8, *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404 (1st Cir.1990), controls, and the plaintiff's case does not meet *Torres*'s standard. Any excessive force was not in connection with the use of the judicial process, but instead followed upon it.

■ Second, I disagree with the Magistrate Judge on the applicability of *United States v. Lombard*, 853 F.Supp. 543, 546 n. 2 (D.Me.1993). Relying on *Lombard*, the Magistrate Judge gave collateral estoppel effect here to the state judge's ruling on the plaintiff's suppression motion in a criminal case that the police officers had probable cause to arrest him. But in that criminal proceeding, the plaintiff (there the defendant) could not appeal the adverse ruling because he was acquitted at trial. Thus, the plaintiff never had the opportunity to attack the adverse ruling. Whatever *Lombard*'s correctness [1] and scope [2] when it was decided, the Maine Law Court has recently made clear that the availability of appeal is critical for a prior court's suppression order to have collateral estoppel effect.

> First, there obviously must be an identity of issues in the two proceedings. Second, a defendant must have had sufficient incentive to have vigorously and thoroughly litigated the issue in previous proceedings.... Third, the defendant estopped must have been a party to the previous litigation. Fourth, the applicable law must be identical in both proceedings.... Fifth and finally, the first proceeding must result in a final judgment on the merits that provides the defendant not only the opportunity to appeal, but also sufficient incentive.

*State of Maine v. Hider*, 715 A.2d 942, 946 (Me.1998), *quoting* Richard B. Kennelly,

---

1. *Lombard* called the issue a matter of Maine law (the parties here agree with that proposition), but proceeded to cite a Federal Circuit case on the issue of finality/appealability, a case that itself described appealability as "the right, even if not exercised, to challenge on appeal the correctness of the earlier decision." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1135 (Fed.Cir.1985). *Lombard* also cited the *Restatement of (Second) Judgments* § 13 (1982). Comment g does indicate some flexibility, particularly when nec-

essary to avoid delay because the earlier decision is still subject to appeal, but lists review on appeal and the availability of appeal as factors in determining that the decision should be given preclusive effect.

2. *Lombard* pointed out that the decision to which it granted collateral estoppel had in fact been reviewed, albeit by the judge who made the original decision. 853 F.Supp. at 546 n. 2.

Jr., *Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases,* 80 Va. L.Rev. 1379, 1385 (1994). I follow this most recent pronouncement, and decline to give collateral estoppel effect to the Maine District Court's finding of probable cause.

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge is hereby ADOPTED IN PART AND REJECTED IN PART. The defendants' motion for summary judgment is GRANTED as to Counts VII and VIII and as to any claims in Counts V and VI arising out of the defendants' testimony in any state-court proceeding, and is otherwise DENIED.

SO ORDERED.

### RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVID M. COHEN, United States Magistrate Judge.

The defendants, Stephen Lyons and Sean Lally, police officers in Westbrook, Maine, move for summary judgment in this action that was removed to this court from the Maine Superior Court (Cumberland County). I recommend that the court grant the motion in part.

### I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.,* 261 F.3d 90, 93–94 (1st Cir.2001)

(quoting *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel,* 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

### II. Factual Background

The following undisputed material facts are appropriately presented by the defendants in their statement of material facts in accordance with this court's Local Rule 56.

In September 2000 defendant Lyons was employed by the City of Westbrook as a detective sergeant. Defendants' Statement of Material Facts ("Defendants' SMF") (Docket No. 8) ¶ 1; Plaintiff's Objection to Defendant's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 10) ¶ 1. In September 2000 defendant Lally was employed as a detec-

tive with the Westbrook Police Department. *Id.* ¶ 4. Both were graduates of the Maine Criminal Justice Academy and certified by the state to function as police officers in the state. *Id.* ¶¶ 2, 5.

On September 19, 2000 Westbrook police officer Stephen Crocker took an incident report concerning the theft on September 16 or 17 of an all-terrain vehicle ("ATV") from a person who identified himself as Steve Foster. *Id.* ¶¶ 7, 10. Foster is the service manager for Dead River Oil Company and had stored two ATVs at the Dead River bulk plant at 14 Terminal Way, Westbrook. *Id.* ¶ 8. The bulk plant is a fenced-in area containing large propane storage tanks. *Id.* ¶ 9. On the morning of September 21, 2000 Lyons spoke with Foster on the telephone about his complaint. *Id.* ¶ 11. Foster told Lyons that he suspected the manager of the Dead River bulk plant, the plaintiff, knew something about the theft of the ATV. *Id.* ¶ 12. Foster told Lyons that the plaintiff had physical control of the bulk plant, was often alone at the plant and was responsible for securing the facility at night. Defendants' SMF ¶ 13.[1] Foster told Lyons that he had reason to suspect the plaintiff in the theft of the ATV. *Id.* ¶ 14.[2] Foster further advised Lyons that relatives of his, Genaro and Linda Balzano, who live on the same street as the plaintiff, saw a pickup

truck with an ATV in the back the previous weekend and that they had observed the plaintiff and a group of young men standing around the pickup and ATV in front of the plaintiff's house at that time. *Id.* ¶ 16.[3] Lyons asked Foster if he believed the plaintiff had stolen the ATV himself and Foster replied that he "wasn't sure." Defendants' SMF ¶ 17; Plaintiff's Responsive SMF ¶ 17. Foster clearly conveyed to Lyons his suspicion that the plaintiff at least had information about his stolen ATV. *Id.* ¶ 18.

Lyons told Foster that he would contact the plaintiff and inquire about his knowledge of the theft. *Id.* ¶ 19. Following his conversation with Foster, Lyons telephoned the plaintiff at the bulk plant and asked if it was possible for him to come to the Westbrook police station to discuss the theft of Foster's ATV. *Id.* ¶ 20. After further conversation, Lyons told the plaintiff that he would come to the bulk plant immediately to speak with him. *Id.* ¶¶ 22–23. Lally accompanied Lyons to the bulk plant to interview the plaintiff. *Id.* ¶ 24. At the plant an employee directed the detectives to the rear of the building when they asked for the plaintiff. *Id.* ¶ 25. Lyons and Lally met the plaintiff at the rear of the building, identifying themselves as Westbrook police detectives. *Id.* ¶¶ 26–

---

1. The plaintiff purports to deny this paragraph of the defendants' statement of material facts, Plaintiff's Responsive SMF ¶ 13, but his denial does not attempt to demonstrate that Foster did not tell Lyons this. Rather, the plaintiff contends that some of what Foster told Lyons was not true. *Id.* & Affidavit of Plaintiff, Christopher Wilson ("Plaintiff's Aff.") (Docket No. 11) ¶¶ 6 & 7. Since the substance of the paragraph is offered to show what Lyons knew at the relevant time, the actual truth of what Foster told him is not relevant in any event. Because the assertions as presented in paragraph 13 of the defendants' statement of material facts are not disputed by the plaintiff's response, and because

they are supported by the reference to the summary judgment record given by the defendants, the paragraph is deemed admitted.

2. See n. 1 above. The plaintiff also asserts that "based on information provided by Mr. Foster, [he] believes that Detective Lyons did not receive the information contained in paragraph 14. See Pl's Exh. at 6 & 7." Plaintiff's Responsive SMF ¶ 14. The cited paragraphs of the plaintiff's affidavit, which he refers to as plaintiff's exhibit, provide no support for this assertion.

3. See n. 1 above.

28. The plaintiff sat on a propane tank and the detectives stood within four or five feet of him. *Id.* ¶¶ 32–33. Lyons told the plaintiff that he had received information to the effect that someone had seen him with Foster's stolen ATV. *Id.* ¶ 34.

The plaintiff's response to this statement is very much in dispute. At some point, the defendants decided to arrest the plaintiff. Defendants' SMF ¶ 43.[4] The defendant was handcuffed while on the ground and then the defendants stood him up. *Id.* ¶¶ 47–48.[5] Lally then adjusted the handcuffs and double locked them for the plaintiff's comfort. *Id.* ¶ 49.[6] The defendants then led the plaintiff to the front of the building, where Lyons patted him down for weapons and had him sit on the front stairs. Defendants' SMF ¶ 50; Plaintiff's Responsive SMF ¶ 50. Lally radioed for a uniformed officer to transport the plaintiff to the county jail. *Id.* ¶ 51. The plaintiff did not complain of any injuries at this time. *Id.* ¶ 53. Lyons read the plaintiff his Miranda rights. *Id.* ¶ 55. The plaintiff told Lyons that he did not steal the ATV. *Id.* ¶ 57. Officer Hebert arrived and transported the plaintiff to the sheriff's office. *Id.* ¶ 59.

The plaintiff was charged with obstructing government administration and resisting or refusing to submit to arrest. Defendants' SMF ¶ 60.[7] While the defendants were at the bulk plant, Foster arrived and told them that he had just discovered that his second ATV had also been stolen from the rear of the terminal. Defendants' SMF ¶¶ 58, 65; Plaintiff's Responsive SMF ¶¶ 58, 65.[8] Later that day, Foster telephoned Lyons at the police department and told him that he had checked the terminal security fence and found no damage and discovered that the rear gate padlock was missing. Defendants' SMF ¶ 66.[9]

4. The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but he does not deny that the defendants arrested him. Plaintiff's Responsive SMF ¶ 43 & Plaintiff's Aff. ¶ 26.

5. Again, the plaintiff purports to deny these paragraphs of the defendants' statement of material facts in their entirety, but his denial does not address the assertions that he was on the ground when handcuffed and that the defendants then stood him up. Plaintiff's Responsive SMF ¶¶ 47–48 & Plaintiff's Aff. ¶¶ 30–31.

6. The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but his denial is completely unresponsive to the factual assertions made by the defendants, Plaintiff's Responsive SMF ¶ 49 & Plaintiff's Aff. ¶ 32, and the paragraph is accordingly deemed admitted.

7. The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but the only citation given in support of the denial, two pages of testimony by Lyons in state court, establishes that the defendant was charged with at least these two crimes and possibly with criminal threatening as well. Plaintiff's SMF ¶ 60 & Transcript, State of Maine v. Christopher Wilson (Exh. 4 to Defendants' SMF) at 16–17.

8. The plaintiff objects to paragraph 65 of the defendants' statement of material facts "as not being based upon personal knowledge of the affiant." Plaintiff's Responsive SMF ¶ 65. Paragraph 65 itself cites paragraph 12 of the Affidavit of Stephen Lyons; presumably, it is Lyons whom the plaintiff contends does not have the requisite personal knowledge. However, Lyons, the affiant, certainly has personal knowledge of what Foster said to him, which is what is presented in that paragraph of the affidavit.

9. The plaintiff objects to paragraph 66 of the defendants' statement of material facts "as not being within the personal knowledge of the affiant." Plaintiff's Responsive SMF ¶ 66. Again, the paragraph is supported by a citation to Lyons' affidavit, and again, Lyons certainly has personal knowledge of what Foster told him, which is all that the paragraph presents.

Later in the night of September 21, 2000 Lyons telephoned Linda Balzano. Defendants' SMF ¶ 81; Plaintiff's Responsive SMF ¶ 81. She told Lyons that when she had seen the pickup truck in front of the plaintiff's house the previous weekend there were young men standing around the truck but the plaintiff was not there. *Id.* ¶¶ 82–83.[10] The information that the plaintiff was not present with the young men and the ATV in the truck directly contradicted what Foster had reported to Lyons in recounting the Balzanos' statements to him. *Id.* ¶ 84.

The plaintiff's criminal defense attorney filed a motion to suppress in the criminal case brought against him in state court, claiming that no probable cause existed for the plaintiff's arrest on September 21 2000. *Id.* ¶ 87. A hearing was held on that motion on March 26, 2001 in the Maine District Court (Cumberland County). *Id.* ¶ 88. At the hearing the plaintiff's attorney narrowed the motion to challenge the propriety of the arrest itself, based on an alleged lack of probable cause. *Id.* ¶ 89. Both defendants testified for the state at the hearing; both were cross-examined by the plaintiff's attorney. *Id.* ¶¶ 90, 92. The plaintiff also testified. *Id.* ¶ 91. The judge subsequently ruled that probable cause existed to arrest the plaintiff on September 21, 2000. Defendants' SMF ¶ 93.[11] A trial on the charges against the plaintiff was held in the Maine Superior Court (Cumberland County) on June 25, 2001 at which both defendants testified

and were cross-examined by the plaintiff's attorney. Defendants' SMF ¶ 94; Plaintiff's Responsive SMF ¶ 94. The plaintiff also testified. *Id.* ¶ 95. At the conclusion of the evidence, the trial judge acquitted the plaintiff. *Id.* ¶ 96.

Neither defendant received any notice of claim from the plaintiff or his attorney within 180 days of September 21, 2000, the date of the arrest; March 26, 2001, the date of the probable cause hearing; or June 25, 2001, the date of the trial. *Id.* ¶¶ 99–100.

### III. Discussion

### A. Counts I and II

Count I alleges that Lyons "violated a clearly known and well established right" by "arresting the plaintiff without probable cause." Complaint (attached to Notice of Removal (Docket No. 1)) ¶ 25. Count II makes the same allegation against Lally. *Id.* ¶ 27. The defendants contend that these claims are barred by the doctrine of collateral estoppel. Defendants' Motion for Summary Judgment, etc. ("Motion") (Docket No. 7) at 9–12. This argument is based on the state district court's finding after hearing, Exhs. 4 & 5 to Defendants' SMF, that the defendants had probable cause to arrest the plaintiff, Motion at 10–11. In *United States v. Lombard*, 853 F.Supp. 543, 545–46 (D.Me.1993), this court held that a defendant charged with a crime in this court could not seek to suppress evidence which had been the subject

---

10. The plaintiff purports to deny paragraph 82 of the defendants' statement of material facts, but the paragraph of the plaintiff's affidavit cited in support of that denial bears no relationship whatsoever to the facts alleged in paragraph 82. Plaintiff's Responsive SMF ¶ 82 & Plaintiff's Aff. ¶ 43. Accordingly, the paragraph, which is supported by the reference to the summary judgment record given by the defendants, is deemed admitted.

11. The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but his "denial" is in fact an attack on the legal standard allegedly used by the judge in reaching this conclusion, Plaintiff's Responsive SMF ¶ 93; it is not a denial that the judge in fact made this ruling, which is amply supported by the record references cited by the defendants.

of a motion to suppress in an earlier state-court proceeding.

The Court is satisfied that [the defendant] is collaterally estopped from reasserting the issues contained in his instant motion to suppress. In *State v. Moulton*, 481 A.2d 155 (Me.1984), a defendant was indicted after a court had already held a suppression hearing pursuant to an earlier indictment on slightly different grounds. The court refused to grant defendant another suppression hearing because he faced sufficiently serious charges in the first indictment, and therefore had every incentive to litigate the suppression issue "fully and vigorously." *Id.* at 162 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979))....

This Court must give the state court suppression findings the preclusive effect that they would have in a Maine court. *See* 28 U.S.C.S. § 1738 (1989); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). A finding must have been actually litigated on the merits and determined by a valid final judgment to be given preclusive effect. *Hossler v. Barry*, 403 A.2d 762, 767 (Me. 1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–33, 99 S.Ct. 645, 651–53, 58 L.Ed.2d 552 (1979). [The defendant's] suppression motion was fully litigated in the state court proceeding.... The state court suppression decision is a valid final judgment for purposes of collateral estoppel. It was properly raised, submitted for determination, and decided. *See Kathios v. General Motors Corp.*, 862 F.2d 944, 946 (1st Cir.1988).

*Id.* The same result should obtain when a plaintiff in a civil action in this court seeks to relitigate the outcome of a suppression hearing in state court. *Mastracchio v. Ricci*, 498 F.2d 1257, 1259–61 (1st Cir. 1974) (state criminal conviction may have collateral estoppel effect on federal civil rights action). *See also Napier v. Town of Windham*, 187 F.3d 177, 184 (1st Cir. 1999). The plaintiff's contention that the state court's suppression decision is not final for purposes of collateral estoppel, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opposition") (attached to Plaintiff's Objection to Defendants' Motion for Summary Judgment (Docket No. 9) at 9–10, was rejected by this court in *Lombard*, 853 F.Supp. at 546 n. 2).

The plaintiff's alternate argument, that the state suppression hearing judge erroneously evaluated the evidence presented at the suppression hearing in the light most favorable to the state, Opposition at 10, is not supported by the record. The plaintiff's response to the defendants' statement of material facts cites paragraph 46 of his own affidavit and four pages of the transcript of the suppression hearing as evidence to support his assertion that an improper standard was used, making it improper to apply the doctrine of collateral estoppel. Plaintiff's Responsive SMF ¶ 93. The plaintiff's affidavit makes no showing that he is qualified to determine whether the state court applied the proper legal standard. He asserts that the district court's ruling "was based upon the District Court Judge's statement that the evidence must be viewed in light [sic] most favorable to the State." Plaintiff's Aff. ¶ 46. The pages of the transcript cited in the plaintiff's statement of material facts reveal that the state court judge made no such statement. The only use of those words was made by the plaintiff's attorney, who also represented him at the suppression hearing. Transcript, State of Maine v. Christopher D. Wilson (Exh. 4 to Defendants' SMF) at 69. It cannot reasonably be concluded from the transcript that the

state court itself applied that standard to the evidence presented at the hearing.

While the federal circuits are in disagreement on this issue, *compare, e.g., Johnson v. Watkins*, 101 F.3d 792, 795–96 (2d Cir.1996) (no preclusive effect in federal court civil rights action to suppression ruling in state court where plaintiff subsequently acquitted; applying New York law), with *Haupt v. Dillard*, 17 F.3d 285, 288–89 (9th Cir.1994) (plaintiff in federal civil rights action collaterally estopped to argue officers lacked probable cause to arrest based on contrary finding by state court, even though plaintiff was subsequently acquitted; applying Nevada law), it is state law that governs, and this court has interpreted Maine law in a manner that supports the defendants' position. They are entitled to summary judgment on Counts I and II.

### B. Counts III and IV

■ Count III alleges that Lyons "has used excessive force ... in violation of a clearly known and well established right...." Complaint ¶ 29. Count IV makes the same claim against Lally. *Id.* ¶ 31. Even where there is probable cause to arrest, a plaintiff may bring a claim that the officers used excessive force in making the arrest. *Tennessee v. Garner*, 471 U.S. 1, 7–22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The defendants contend, without citation to authority, that they only used a reasonable amount of force under the circumstances as a result of the plaintiff's physically resisting being taken into custody, as evidenced by the fact that the plaintiff suffered no injuries and requested no medical attention. Motion at 15. In the alternative, they assert that they are entitled to qualified immunity under the circumstances.

The facts asserted by the defendants in support of their first argument are disputed by the plaintiff, Plaintiff's Responsive SMF ¶¶ 37, 40–43, 45–46, 53, and accordingly cannot provide the basis for summary judgment.

The doctrine of qualified immunity provides that "government officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

First, if the right asserted by the plaintiff was "clearly established" at the time of its alleged violation, we are required to assume that the right was recognized by the defendant official; second, we will deny the immunity claim if a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right.

*Burns v. Loranger*, 907 F.2d 233, 235–36 (1st Cir.1990) (citations omitted). "A court required to rule upon the qualified immunity issue must consider ... this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The right to be free from the use of excessive force in the course of an arrest was clearly established before September 21, 2000. *Id.* at 201–02. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Here, the plaintiff alleges that, when he stood up and said in response to Lyons' statement that he had received information that someone had seen the plaintiff with the

stolen ATV, Defendants' SMF ¶ 34; Plaintiff's Responsive SMF ¶ 34, "That's bullshit," Plaintiff's Responsive SMF ¶ 35 & Plaintiff's Aff. ¶ 18, the defendants "charged" him, threw him down on the ground and punched him several times in the back, head and side, *id.;* that the defendants also kicked him repeatedly while he was on the ground, Plaintiff's Responsive SMF ¶ 37 & Plaintiff's Aff. ¶ 20; that he did not resist arrest, Plaintiff's SMF ¶¶ 42–43 & Plaintiff's Aff. ¶¶ 25–26; and that the defendants "ripped" his arm from underneath his body and stood him up "in an aggressive, brutal and violent manner," Plaintiff's Responsive SMF ¶ 48 & Plaintiff's Aff ¶ 31. Taken in the light most favorable to the plaintiff, these factual allegations can reasonably be interpreted to show an unreasonable use of force under the circumstances. This is very much a disputed area of material facts and the defendants are not entitled to summary judgment on Counts III and IV.

## C. Counts V and VI

■ Count V alleges that Lyons "falsely swore to facts he knew were not true in order to procure a prosecution against the plaintiff knowing that the prosecution would not prevail but for the use of his false testimony ... in violation of well known and clearly established rights which included not to be prosecuted on false statements in violation of his right against due process [sic]." Complaint ¶ 33. The same allegation is made against Lally in Count VI. *Id.* ¶ 35. The defendants contend that they are absolutely immune from liability for their testimony at the suppression hearing and the state-court criminal trial. Motion at 13. The plaintiff responds that it was clearly established law at the relevant time that "the use of false testimony against an individual is a constitutional deprivation." Opposition at 14.

He contends that "the police officers provided false statements in their police reports which served as their basis for prosecution. They subsequently ratified that conduct by testifying falsely at a suppression hearing and subsequently at trial." *Id.*

■■ Police officers have absolute immunity from civil liability for allegedly false testimony given in judicial proceedings. *Briscoe v. LaHue,* 460 U.S. 325, 341–46, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (§ 1983 claim). Perhaps this is why counsel for the plaintiff identifies the false statements as those made in the police reports, although he offers no evidence that the reports themselves were sworn. Entitling Counts V and VI "False Swearing," Complaint at 9–10, thus appears to be a misnomer. "[T]he mere filing of ... false police reports, by themselves without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Landrigan v. City of Warwick,* 628 F.2d 736, 744–45 (1st Cir.1980). However, if action is taken on the basis of a false police report, a plaintiff's constitutional rights may then be violated and a section 1983 action may lie. *Id.* The plaintiff has cast his claim in these terms. The defendants' motion does not address this claim and they are not entitled to summary judgment on Counts V and VI as they are presented.

## D. Counts VII and VIII

Count VII alleges that Lyons "committed the offense of malicious prosecution ... [,] knew he did not have probable cause and used false testimony in order to prosecute the plaintiff and in fact the prosecution against the plaintiff was not successful...." Complaint ¶ 37. The same allegations are made against Lally in Count VIII. *Id.* ¶ 39.

■ The defendants first contend that these counts allege state-law tort claims and are barred by the plaintiff's failure to comply with the provisions of the Maine Tort Claims Act, 14 M.R.S.A. § 8101 *et seq.* Motion at 9. If these were state tort claims, the defendant would be correct. *See, e.g., Pew v. Scopino,* 904 F.Supp. 18, 32 (D.Me.1995). However, the plaintiff contends that these claims are brought under section 1983 as federal claims, Opposition at 13, and the complaint, read in its entirety, bears this out. Only federal law is invoked in the section of the complaint entitled "Jurisdiction and Venue." Complaint at 2. Such claims may be brought under section 1983 when the plaintiff can show that the challenged conduct deprived him of substantive or procedural due process of law. *Torres v. Superintendent of Police of Puerto Rico,* 893 F.2d 404, 408–11 (1st Cir.1990). The plaintiff here invokes only substantive due process. Opposition at 13.

■ The First Circuit in *Torres* suggests, but does not decide, that a federal plaintiff must first prove the elements of malicious prosecution under state law. 893 F.2d at 409. If that is the case, the plaintiff's claims fail in this case. Lack of probable cause is an element of a claim of malicious prosecution under Maine law, *Trask v. Devlin,* 788 A.2d 179, 182 (Me. 2002), and, as discussed above, this element has already been decided against the plaintiff by the Maine District Court in a decision that is to be given collateral estoppel effect in this court. If proof of all of the elements of a state-law claim is not required, an unlikely circumstance after *Torres,* the plaintiff must show that the conduct at issue was malicious and "so egregious that it violated substantive … due process rights." *Torres,* 893 F.2d at 409.

For substantive due process purposes, the alleged malicious prosecution must be conscience-shocking. Conscience-shocking conduct will of course be determined on a case-by-case basis…. In cases of a Section 1983 malicious prosecution claim, substantive due process violations have included: seven hours of detention and accompanying humiliation, ridicule and mental anguish; filing charges maliciously in an attempt to suppress plaintiff's First Amendment right to make comment concerning a public official's duties; fabricating charges, falsifying facts, destroying evidence, and strip searching plaintiff because of his race; and falsifying police reports, contriving charges and detaining plaintiff in manacles for reasons of race. Where plaintiff has not been physically abused, detained, prosecuted due to race or political motivation or otherwise deprived of equal protection of the law, courts are reluctant to find conscience-shocking conduct that would implicate a constitutional violation. We emphasize that misuse of the legal process alone will not be enough to sustain a claim.

*Id.* at 410 (citations and internal quotation marks omitted). Here, the physical abuse alleged by the plaintiff is not alleged to have racial or political motivation. If it is necessary to reach this issue, I conclude that the alleged conduct of the officers, while offensive and not to be condoned, does not rise to the "conscience-shocking" level required for a substantive due process violation.

The defendants are entitled to summary judgment on Counts VII and VIII.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be GRANTED as to Counts I, II, VII and VIII and as to any claims included

in Counts V and VI arising out of the defendants' testimony in any state-court proceeding, and otherwise **DENIED**.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

May 22, 2003.