2011 VT 127

**David M. Lay v. William J. Pettengill, Elizabeth F. Novotny, David W. Gartenstein, Daniel K. Troidl, the Commissioner of Department of Public Safety and State of Vermont**

[38 A.3d 1139]

No. 10-185

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 23, 2011

Motion for Reargument Denied December 19, 2011

144

*Herbert G. Ogden* of *Ogden Law Offices, P.C.*, Danby, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Jon Jeffrey Tyzbir* and *David Groff*, Assistant Attorneys General, Montpelier, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiff David M. Lay appeals from the superior court's order granting summary judgment to defendants William J. Pettengill, Elizabeth F. Novotny, and Daniel K. Troidl on his complaint. Lay's claims stem from an internal investigation into his behavior as a state trooper and his subsequent resignation

from the Vermont State Police (VSP). Lay argues that the superior court erred in granting judgment to defendants on his claims of fraudulent nondisclosure, retaliatory prosecution, malicious prosecution, and negligent referral. He also challenges several discovery rulings made by the court. We affirm.

¶ 2. The superior court found the following facts undisputed. Lay worked as a state trooper for the VSP. On June 29, 2004, he was suspended from duty due to ongoing investigations by the Internal Affairs Unit (IAU). Lay's access to the police barracks was revoked, and he was ordered to turn in his badge, identification, weapon, cruiser, and keys. On July 8, Lay contacted a fellow trooper and asked to meet. The parties met at a local eating establishment. According to the fellow trooper, Lay asked him to surreptitiously remove certain items from Lay's desk and police cruiser that Lay believed could be used against him in the IAU investigation. Lay told the trooper not to make any notes about their conversation. The trooper understood Lay to be referring to marijuana paraphernalia, marijuana, and pills. He had seen Lay seize at least some of these items from a residence several months earlier in connection with a next-of-kin notification. Lay apparently did not intend to use these items in any criminal prosecution.

¶ 3. Lay does not contest telling the fellow trooper to get rid of items in his desk, although he challenges that there was marijuana in his desk. He also does not dispute telling the trooper that he wanted the items removed because "they," presumably IAU, would "like to make something ugly out of it."

¶ 4. Lay's fellow trooper informed his supervisors of Lay's request. Captain Pettengill informed the IAU, and these allegations were included as part of an investigative report authored by Lieutenant Troidl, Director of Internal Affairs. The report also detailed numerous other items found in Lay's desk that indicated neglect of duty, as well as a lack of attention and follow-through with various aspects of his work. This included twenty-seven items of evidence, some of which dated back to 2001, that should have been included with case files or been submitted to the lab.

¶ 5. In August 2004, the IAU report was sent to the Windham County State's Attorney's Office pursuant to statute. See 20 V.S.A. § 1923(b) (IAU must investigate allegations of misconduct and the head of IAU "shall immediately report all allegations to the state's attorney of the county in which the incident took place, to the

attorney general and to the governor, unless the head of the unit makes a determination that the allegations do not include violation of a criminal statute"). In a cover letter accompanying the report, Lieutenant Troidl stated that, after the conclusion of the IAU investigation, Novotny, a staff attorney with the Department of Public Safety (DPS),[1] "pointed out that Trooper Lay's conduct may rise to the level of a criminal complaint, specifically Title 13 VSA 3006 and/or Title 13 VSA 3009."[2] The letter asked the prosecutors to review and advise whether they intended to pursue criminal charges.

¶ 6. In September 2004, DPS Commissioner Kerry Sleeper preferred charges against Lay alleging thirty-six counts of various infractions of the code of conduct governing VSP members. These included charges of falsification and misuse of property and evidence; making a false statement; failing to follow-up or make reports in numerous cases; and abuse of authority for conducting a warrantless search. Commissioner Sleeper also reserved the right to amend the charges to add any appropriate charges of criminal conduct if an investigation revealed that Lay violated any criminal laws. The commissioner indicated that he intended to dismiss Lay absent extenuating or mitigating circumstances. Included with the preferred charges was a copy of the IAU report.

¶ 7. Lay hired an attorney who negotiated a resolution to the preferred charges with defendant Novotny. As a result of the negotiation, Lay resigned and executed a release in exchange for eight weeks of pay and an agreed-upon process for addressing future employment referral requests. Lay and Commissioner Sleeper signed the agreement on October 20, 2004. There was no apparent discussion or inquiry between the parties' attorneys that the agreement would resolve any criminal matters.[3]

¶ 8. In late November 2004, the Windham County State's Attorney's Office became involved in commencing a criminal

---

[1] The Commissioner of the Department of Public Safety "supervise[s] and direct[s] the activities of the state police." 20 V.S.A. § 1872.

[2] Under 13 V.S.A. § 3006, it is a crime for a public officer to "willfully neglect[] to perform the duties imposed upon him or her by law"; under 13 V.S.A. § 3009, it is a crime to refuse or delay to execute criminal process.

[3] Nor would it have been appropriate to do so in light of Vermont Rule of Professional Conduct 4.5, which states that "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges in order to obtain an advantage in a civil matter."

prosecution against Lay. In April 2005, Deputy State's Attorney David W. Gartenstein charged Lay with two counts of obstruction of justice in violation of 13 V.S.A. § 3015. The information alleged that Lay attempted to obstruct justice by trying to procure the destruction of evidence relevant to an IAU investigation and to procure the destruction of evidence relevant to a VSP investigation and/or the processing of potential criminal cases. The information was supported by an affidavit from a VSP detective sergeant, who had interviewed various witnesses. The affidavit recounted Lay's seizure of drug and drug paraphernalia from a residence, described above, and Lay's subsequent request that a fellow trooper remove the evidence from Lay's desk and destroy it. The affidavit also recounted the twenty-seven items of evidence found in Lay's desk — items that should have been submitted to the lab as evidence and included with case files — including some of the evidence that Lay had asked his fellow trooper to destroy.

¶ 9. A judge found probable cause to support the charge and signed a warrant for Lay's arrest. Lay was employed by a private company in Iraq at the time, and he was terminated from his job, allegedly as a result of the felony charges. Lay subsequently moved to dismiss the charges for lack of a prima facie case, and his motion was denied.

¶ 10. When Lay returned to Vermont, he was charged with numerous other crimes, including aggravated domestic assault, unlawful restraint, sexual assault, and domestic assault. He was released on conditions. In May 2006, he was charged with two counts of violating an abuse-prevention order and two counts of violating conditions of release. While these charges were pending, the court dismissed the aggravated domestic assault and sexual assault charges. In January 2007, the parties reached a plea agreement on the remaining charges. Pursuant to that agreement, the State dismissed both counts of obstruction of justice, and the unlawful restraint and domestic assault charges, and Lay pled guilty to two counts of violating an abuse-prevention order and two counts of violating conditions of release.

¶ 11. In April 2008, Lay filed suit against defendants raising numerous claims, including fraudulent nondisclosure, violation of his civil rights, and malicious process. In April 2010, the court issued the summary judgment decision from which Lay appeals. We discuss the court's decision in detail below.

¶ 12. We review the court's decision de novo, applying the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Thus, summary judgment is appropriate where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). As discussed below, we conclude that summary judgment was properly granted to defendants here.

¶ 13. We begin with Lay's fraudulent nondisclosure claim. Lay raised this claim against DPS staff attorney Novotny, alleging that she had a duty to inform him during the negotiation process that she had opined to Lieutenant Troidl that Lay's conduct might give rise to a criminal action. By failing to do so, Lay maintained that Novotny fraudulently induced him to resign by implying "that the settlement resolved all issues" between himself and the State. In other words, Lay suggests that he would not have resigned — notwithstanding the commissioner's indication that Lay would be fired — if Lay had known that Novotny thought that he might have violated several criminal statutes, statutes that he was never charged with violating.

¶ 14. The trial court found that Lay failed to meet his burden of proving fraudulent nondisclosure. See *Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401, 35 A.3d 950 ("The party alleging fraud has the burden of proving each of the elements by clear and convincing evidence."). We agree. "Fraudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Silva v. Stevens*, 156 Vt. 94, 103, 589 A.2d 852, 857 (1991); see also *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 66, 179 Vt. 167, 893 A.2d 298 (same). A duty to disclose may arise "from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge." *White v. Pepin*, 151 Vt. 413, 416, 561 A.2d 94, 96 (1989) (quotations omitted). "In arm's-length transactions," however, "where facts are equally within the means of knowledge of both parties, neither party is required to speak, in the absence of inquiry respecting such matters." *Id.* (quotation marks and alternations omitted) (quoting *Newell Bros. v. Hanson*, 97 Vt. 297, 303-04, 123 A. 208, 210 (1924)); see also *Silva*, 156 Vt. at 105, 589 A.2d at 858-59 (stating that an independent inquiry must be made if it is clear from the parties' relationship that such inquiry should precede one party's reliance on other party's representations).

¶ 15. As an initial matter, Novotny's statement to Troidl was the communication of a subjective opinion, not a statement of fact. See Restatement (Second) of Torts § 545 cmt. d (1977) ("[A]s between bargaining adversaries there can ordinarily be no justifiable reliance upon an opinion . . . . The recipient is not justified in accepting the opinion of a known adversary on the law and is expected to draw his own conclusions or to seek his own independent legal advice."). Lay knew the facts on which Novotny based her opinion about his potential criminal liability. He and his attorney had full access to the preferred charges and to Troidl's IAU report, and presumably both Lay and his attorney read these materials before engaging in settlement negotiations.

¶ 16. Troidl, of course, had a statutory duty to send the IAU report to the Windham County State's Attorney unless he concluded that the allegations against Lay did "not include violation of a criminal statute." 20 V.S.A. § 1923(b). Lay and his attorney could have inquired whether such referral had been made. See Restatement (Second) of Torts § 551 cmt. k (recognizing in context of fraudulent nondisclosure cases that a "defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself"); see also *Solares v. Solares*, 232 S.W.3d 873, 881 (Tex. App. 2007) ("Parties contracting at arm's length generally have a duty of ordinary care to protect their own interests and are charged with knowledge reasonable prudence would have led them to discover.").

¶ 17. Lay identifies no basis for imposing a duty on Novotny to disclose her opinion about his potential criminal liability during negotiations to resolve Lay's employment dispute. "Failing to disclose information is not fraudulent unless one has an affirmative duty to disclose, as in a confidential or fiduciary relationship." *Solares*, 232 S.W.3d at 881; see also Restatement (Second) of Torts § 551 cmt. f (identifying relations of "trust and confidence" to include "those of the executor of an estate and its beneficiary, a bank and an investing depositor, and those of physician and patient, attorney and client, priest and parishioner, partners, tenants in common and guardian and ward"). Novotny and Lay were adversaries. See *Zawaideh v. Neb. Dep't of Health & Human Servs. Regulation & Licensure*, 792 N.W.2d 484, 496 (Neb. 2011) ("[G]enerally speaking, the adversarial context of settlement negotiations weighs against a duty to disclose.").

Novotny was representing DPS, and Lay had his own lawyer who was actively involved in the negotiation process. See *Greenery Rehab. Grp., Inc. v. Antaramian*, 628 N.E.2d 1291, 1294 (Mass. App. Ct. 1994) (seller of building had no duty to disclose to purchaser that the major tenant was financially unable to meet terms of its lease; especially cogent was that this was "a negotiation and agreement between sophisticated businessmen active in real estate transactions; they were represented by counsel; the buyers made no credit check or inquiry of their own into financial condition of [tenant]"). Each attorney owed a duty of care to her own client, not to third parties. *Hedges v. Durrance*, 2003 VT 63, ¶ 6, 175 Vt. 588, 834 A.2d 1 (mem.) (noting that the policy rationale underlying this rule is especially applicable where third party is the client's adversary who is also represented by his own counsel in the proceedings).[4]

¶ 18. We note, moreover, that the settlement negotiations concerned only Lay's employment status. Novotny's opinion about Lay's potential criminal liability was in no way essential to the resolution of this dispute. See *Zawaideh*, 792 N.W.2d at 496 (determining that potential collateral consequences of physician entering into an "assurance of compliance" to resolve a disciplinary complaint are not basic facts that attorney general's representative had a duty to disclose). Novotny's opinion could not commence or resolve a criminal proceeding. Indeed, Lay was not charged with violating either statute identified by Novotny. Obviously, the criminal investigation and charging process is wholly separate from any negotiations within the VSP regarding Lay's separation from employment. Novotny plainly lacked authority to resolve any criminal charges during the employment negotiation, and no reasonable person would believe otherwise from her silence on the subject. We reject Lay's assertion that he reasonably believed that no criminal charges would be brought because none were identified in the IAU report and because the internal

---

[4] We are not here concerned with a claim of negligent misrepresentation, which is derived from common-law tort principles rather than from an expanded duty of representation by the attorney. See generally 1 R. Mallen & J. Smith, Legal Malpractice § 7:14 (2011 ed.) (discussing nature of negligent misrepresentation claim brought against attorneys). While Lay raises an argument concerning the dismissal of his negligent misrepresentation claim, he raised this argument for the first time in his reply brief. For that reason, we do not address it. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 1 n.2, 176 Vt. 356, 848 A.2d 310.

investigation would cease with his resignation. To the extent that Lay held that belief, it was not reasonable.

¶ 19. The record shows that, with the assistance of counsel, Lay entered into a plain and unambiguous severance agreement. No reasonable person would conclude from this agreement, or the circumstances surrounding its execution, that the agreement immunized Lay from criminal prosecution. The undisputed facts support the trial court's summary judgment decision in Novotny's favor, and we find no error.

¶ 20. We turn next to Lay's retaliatory prosecution claim, which Lay styled in his complaint as a claim for violation of his federal and state civil rights. Lay contends that he was prosecuted in response to what he asserts was the exercise of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution—when Lay twice refused permission for police to retrieve items from his home — and under the First and Fourteenth Amendments to the United States Constitution and Chapter I, Article 13 of the Vermont Constitution — when Lay's attorney wrote a letter to Novotny complaining about a breach of confidentiality in one of the IAU investigations. The trial court construed these allegations as stating a claim for retaliatory prosecution in violation of Lay's state and federal rights to free speech and freedom from unreasonable search.

¶ 21. To prevail on such claim, a plaintiff must ordinarily plead and prove not only the retaliatory basis for inciting the prosecution but also that the prosecution was instituted without probable cause. See *Hartman v. Moore*, 547 U.S. 250, 265 (2006).[5] The trial court in this case found probable cause to support the first count of obstruction of justice but not the second. Nonetheless, it found summary judgment appropriate given that one

---

[5] Lay claims that the requirement to show absence of probable cause should not apply to allegations that defendants retaliated because of his invocation of rights under the Vermont Constitution, rather than the United States Constitution. As the trial court found, however, Lay offered no argument why the test under the state constitution should differ from that under the federal constitution. In this Court, Lay argued that this aspect of *Hartman* should not be followed because it is "an unnecessary and illogical encrustation on the general rule [of] *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)," another federal law case. We reiterate the holding of the superior court that Lay has failed to make a cogent argument under the Vermont Constitution.

felony charge, validly brought, would have inflicted the same harm as two.

¶ 22. It is significant that the trial court in the criminal prosecution previously found probable cause on both counts and additionally denied a motion to dismiss each of the counts for lack of a prima facie case. The mere fact that a criminal tribunal found probable cause normally provides a presumption that probable cause existed in the context of a subsequent wrongful prosecution claim. See, e.g., *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983) ("Once a suspect has been indicted . . . the law holds that the Grand Jury action creates a presumption of probable cause."); see also Restatement (Second) of Torts § 663(2) ("The magistrate's commitment of the accused is evidence that the person initiating the proceedings had probable cause."); see generally J. Perovich, Annotation, *Malicious Prosecution: Effect of Grand Jury Indictment on Issue of Probable Cause*, 28 A.L.R.3d 748 (1969) (collecting cases). This presumption of probable cause is rebuttable only if a plaintiff can demonstrate that the earlier finding of probable cause was based on misleading, fabricated, or otherwise improper evidence. See, e.g., *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006) (Under California law, "[t]he plaintiff can rebut the presumption . . . by demonstrating that the indictment was procured on the basis of false testimony."); *Simpson v. Life Ins. Co. of Georgia, Inc.*, 614 So. 2d 994, 996 (Ala. 1993) ("[T]he return of an indictment is prima facie evidence of probable cause, and that evidence may be overcome only by a showing that the indictment was produced by the misconduct of the party seeking the indictment."); *Colon*, 455 N.E.2d at 1251 ("If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."). A plaintiff cannot, by contrast, merely plead the insufficiency of the evidence that was available to the criminal court at the time. See, e.g., *Penton v. Canning*, 118 P.2d 1002, 1011 (Wyo. 1941) (surveying cases and determining that merely alleging the inadequacy of evidence at the initial finding of probable cause is insufficient to overcome the presumption). There must be a plausible suggestion that the finding of probable cause would not have been reached were it not for some irregularity or impropriety.

▓▓ ▓▓ ¶ 23. The probable cause finding here has an even stronger effect. In this case, the criminal tribunal's finding of probable cause was not merely the result of an unopposed presentation by the State. Cf. *Davis v. United States*, 430 F. Supp. 2d 67, 81 (D. Conn. 2006) (explaining that an indictment only creates a presumption of probable cause in a wrongful prosecution claim "[b]ecause the prosecuting officer at the grand jury indictment has broad discretion over what evidence to present and because Plaintiff was not allowed to be present at the grand jury indictment"). In the underlying criminal case here, Lay unsuccessfully moved to dismiss for lack of a prima facie case pursuant to Vermont Rule of Criminal Procedure 12(d). This motion entitled Lay to "cross-examine witnesses and introduce affidavits or further evidence in his own behalf." V.R.Cr.P. 12(d)(2). As a result, the motion was decided on the basis of an adversarial presentation of the evidence. See *State v. Fanger*, 164 Vt. 48, 52, 665 A.2d 36, 37-38 (1995) (stating that a trial court ruling on a motion to dismiss for lack of a prima facie case is to be "based on all the evidence before it, whether produced by the State or the defendant"). On this motion, the State was required to meet a higher burden than the probable cause standard. *State v. Duff*, 151 Vt. 433, 439, 563 A.2d 258, 262-63 (1989) ("The standard used to judge a motion to dismiss for lack of a prima facie case is stricter [than that required to show probable cause.]"); see also *State v. Cole*, 150 Vt. 453, 455, 554 A.2d 253, 254 (1988) ("The burden is actually the same as that in response to a motion for judgment of acquittal . . . ."). Defendant could have sought to appeal the motion decision under Vermont Rule of Appellate Procedure 5(b)(1).

▓▓▓ ¶ 24. In this context, we find that the criminal court's decision rejecting Lay's motion to dismiss for lack of a prima facie case collaterally estops Lay from relitigating the issue of probable cause for his wrongful prosecution claims in this case. Under Vermont law, the standard for issue preclusion comes from *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990):

> [P]reclusion should be found only when the following criteria are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on

the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying. preclusion in the later action is fair.

We have recognized that collateral estoppel can apply between criminal and civil cases. See *State v. Stearns*, 159 Vt. 266, 268, 617 A.2d 140, 141 (1992) (permitting "cross-over estoppel" between civil and criminal actions). In this case, there can be little doubt that the first and third criteria apply. Indeed, insofar as the legal questions were different, it was because the State was subject to a *stricter* standard in the prior hearing. We also conclude that a judgment pursuant to a motion under Criminal Rule 12(d) is sufficient to satisfy the second and fourth criteria. As described already, that motion entitled Lay to an adversarial hearing and presentation of evidence on the matter of probable cause and provided him with the opportunity to appeal. Although that hearing was not a final judgment in the entire criminal case, it was a final judgment on the issue of probable cause.[6] But cf. *State v. Passino*, 154 Vt. 377, 383 n.2, 577 A.2d 281, 285 n.2 (1990) ("The doctrines of res judicata and collateral estoppel do not prevent reconsideration of a pretrial ruling."). As described in what

---

[6] Although the obstruction of justice charges were dismissed as part of an overall plea agreement, we do not believe this undermined the necessary finality for preclusive effect in this case. Some courts have refused to give preclusive effect to probable cause determinations where the defendant was subsequently released and therefore unable to appeal. See, e.g., *Dukes v. Troy Hous. Auth.*, No. 1:08-CV-479, 2011 WL 1261317, at *3 (N.D.N.Y. Mar. 31, 2011) ("[A]lthough the Troy City Court found that [defendants] had probable cause to stop and then arrest Plaintiff, he was not provided with an opportunity to appeal that decision because the criminal charges were later dismissed."); *Toro v. Gainer*, 370 F. Supp. 2d 736, 740 (N.D. Ill. 2005) (refusing to give collateral estoppel effect to trial court's probable cause determination in part because defendant was subsequently acquitted and therefore lacked the opportunity to appeal); *Wilson v. Lyons*, 270 F. Supp. 2d 73, 75 (D. Me. 2003) (rejecting application of collateral estoppel in malicious prosecution action because "in [the] criminal proceeding, the plaintiff (there the defendant) could not appeal the adverse ruling because he was acquitted at trial [and therefore] the plaintiff never had the opportunity to attack the adverse ruling"). There are two important differences here. First, Lay could have attempted to appeal the denial of the prima facie case motion pursuant to Appellate Rule 5(b)(1). Second, this case, unlike those cited, involved a plea agreement on the basis of which the charges were dismissed. Insofar as the criminal action never reached a final result, it was because Lay agreed to this. Moreover, as described in note 7, *infra*, many cases that find preclusive effect involve procedural postures such that the criminal case never reached a final adverse judgment.

follows, we also find that it is fair to preclude relitigation of probable cause under the facts of this case.

¶ 25. Other courts have generally agreed that a full adversarial hearing on probable cause can have preclusive effect for the purposes of a subsequent wrongful prosecution claim. See, e.g., *Haupt v. Dillard*, 17 F.3d 285, 289-90 (9th Cir. 1994) (finding plaintiff in malicious prosecution action to be collaterally estopped where he had "a full and fair opportunity to litigate the issue of probable cause during the course of his criminal prosecution"); *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) ("Some preliminary hearings are little more than formalities. . . . However, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding . . . ."), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001); *Forsythe v. United States*, No. 3:10-cv-00508-ECR-VPC, 2011 WL 1882385, at *5 (D. Nev. May 17, 2011) ("A plaintiff may be collaterally estopped from bringing a malicious prosecution suit when a preliminary hearing on probable cause was held and decided against the plaintiff in the criminal proceedings preceding the civil suit."); *Hatchett v. City of Detroit*, No. 08-CV-11864, 2010 WL 1754426, at *7 (E.D. Mich. Apr. 30, 2010) (applying collateral estoppel where plaintiff "contested the issue of probable cause at his preliminary hearing," which was an "adversary proceeding" at which he had "the right to call witnesses and cross-examine witnesses produced by the State"); *Deal v. Alegre*, No. C 04-03778 PVT, 2006 WL 436144, at *5 n.11 (N.D. Cal. Feb 21, 2006) (finding that a denial of a "motion for a determination of factual innocence . . . creates an issue of collateral estoppel with regard to the 'probable cause' element of Plaintiff's malicious prosecution claims" where that hearing provided "a full opportunity to test the adequacy of the prosecution's case against him"); *Larsen v. Schultz*, 720 N.Y.S.2d 625, 625 (App. Div. 2001) ("[The criminal court] specifically rejected the argument advanced here, i.e., that the accusatory instruments failed to allege all the elements of the charged offenses. Inasmuch as plaintiffs have had a full and fair opportunity to litigate their

argument in the criminal action, the doctrine of collateral estoppel bars them from relitigating that issue here.").[7]

¶ 26. Where issue preclusion has not been found, it is generally because the result of the initial hearing is alleged to have been procured on the basis of false testimony. See, e.g., *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) ("[D]etermination [of probable cause at preliminary hearing] has no preclusive effect *if* there is evidence that the claim of malicious prosecution is based on a police officer's supplying false information to establish probable cause . . . ."); *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (rejecting collateral estoppel because there was not an identity of issues where plaintiff was for the first time "arguing that the officers misstated material facts in order to establish probable cause at the state level"); *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988) ("[S]imply obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution" where "the finding of probable cause remained tainted by the malicious actions of the government officials."). We agree that it would be unfair to preclude a plaintiff from arguing lack of probable cause when a criminal tribunal found probable cause on the basis of false testimony that the plaintiff is only now in a position to show to be false.

¶ 27. In this case, Lay does make one argument that, along these lines, might be taken to call into question the criminal court's finding of probable cause. He points out that the affidavit upon which the criminal court based its finding of probable cause included a difference from the initial affidavit of the investigating officer. In describing what was found at Lay's desk, the initial affidavit listed, among other things, "marijuana pipes, rolling papers and a piece of paper with pills taped to it." The affidavit that was the basis for the finding of probable cause listed

---

[7] In the majority of these cases, the underlying criminal action did not reach a guilty verdict such that the criminal defendant could have appealed in a noninterlocutory manner. See *Haupt*, 17 F.3d at 287 (acquitted by jury); *Coogan*, 820 F.2d at 172 (dismissed for failure to meet speedy trial requirements); *Forsythe*, 2011 WL 1882385, at *1 (one charge dismissed, one not guilty); *Deal*, 2006 WL 436144, at *5 n.11 (case had already been dismissed when hearing occurred); see also *Thompson v. Mueller*, 976 F. Supp. 762, 766 (N.D. Ill. 1997) (applying collateral estoppel to issue of probable cause despite defendant's inability to appeal in part because "[t]he issue was certainly litigated thoroughly").

"marijuana, pipes, rolling papers, and a piece of paper with pills taped to it." The first of the two added commas in the second version does change the meaning, and Lay argues that it misleadingly indicated criminal activity where there was none. Lay contends that this is significant because, according to his argument, probable cause for the obstruction of justice counts required that the evidence in question be evidence of criminal activity.

¶ 28. We nevertheless find it fair in this case to give preclusive effect to the criminal court decision on the motion to dismiss. First, Lay had the opportunity to address the misplaced comma in the criminal court. An important purpose of the Rule 12(d) motion is to allow a defendant to see the affidavits upon which probable cause is based and to challenge them. Second, although the comma clearly does change the meaning, Lay's argument overstates the significance of this change. A police officer having marijuana, and not just marijuana pipes, in a plastic evidence bag at his police desk does not itself demonstrate criminal activity where there is no evidence that he wanted the marijuana for his own use. The allegation was that Lay obstructed justice by having a fellow trooper destroy the evidence in Lay's desk. The fact that marijuana is an illegal drug which ordinary citizens are prohibited from possessing is of limited significance to Lay's alleged crime. It is not as though the added comma suddenly transformed a description of purely innocent conduct into a description of criminal conduct.

¶ 29. In focusing on the absence of marijuana, Lay's argument confuses the nature of an investigation with its outcome. Lay would have us conclude that because there appears to have been no marijuana at his desk, he was therefore not obstructing a sufficiently serious investigation to qualify as obstruction of justice. This does not follow. Corruptly seeking the destruction of evidence can qualify as obstruction of justice even if the evidence in question does not singlehandedly demonstrate criminal activity. The question of whether an investigation is such that interference with it can constitute obstruction is answered ex ante, not ex post based on what the investigation uncovers. In this case, the trial court in the criminal case determined that internal affairs investigations governed by 20 V.S.A. § 1923 do relate to and implicate the administration of justice to the point that interference with them constitutes obstruction of justice, and it found probable

cause on that basis.[8] That judgment was based on our decision in *State v. O'Neill*, 165 Vt. 270, 682 A.2d 943 (1996), which interpreted the omnibus clause of 13 V.S.A. § 3015 broadly. Without reaching the correctness of the criminal court's judgment, we conclude that the misstatement of what resulted from the investigation does not entitle Lay to relitigate the criminal court's interpretation of § 3015 via his wrongful prosecution claims.

¶ 30. We turn next to Lay's malicious prosecution claim. In his complaint, Lay alleged in relevant part that, with a wrongful motive, Novotny encouraged or made the complaint that led to his criminal prosecution.[9] He maintained that Novotny did so without probable cause to believe that he committed any crime. He also asserted that the prosecution of the obstruction of justice charges ended in his favor. The trial court found that Lay failed to state a claim on which relief could be granted because the criminal case was not resolved in Lay's favor and there was nothing in the record to show that Lay was innocent of wrongdoing. See *Anello v. Vinci*, 142 Vt. 583, 586-87, 458 A.2d 1117, 1119 (1983) (identifying elements of malicious prosecution claim).

¶ 31. Given that a lack of probable cause is a necessary element for malicious prosecution, *id.*, and having already found that Lay is precluded from arguing a lack of probable cause in his present action, see *supra*, ¶¶ 22-30, we conclude that summary judgment was appropriate on the malicious prosecution claims as well as on the retaliatory prosecution claims.

¶ 32. Furthermore, to the extent that Lay argues that there is a dispute of fact regarding the "favorable termination" element,[10] we find this argument without merit. In *Siliski v.*

---

[8] Lay points to footnote two of the criminal court decision — stating that "[a] contrary conclusion would probably be reached if the allegations being investigated involved no potential criminal misconduct," — as evidence that the suggested presence of marijuana did affect the decision. But this argument again mistakenly equates "allegations being investigated" with the results of the investigation. It is not the case that the allegations against Lay "involved no *potential* criminal misconduct" (emphasis added), and this was sufficient for the probable cause finding on the obstruction of justice charges.

[9] We note that Lay was not charged with violating either statute suggested by Novotny; additionally, the IAU report detailing Lay's behavior was submitted to the Windham County State's Attorney pursuant to statute.

[10] On appeal, Lay asserts that, as applied to criminal cases, the "favorable termination" element is outmoded and unfair. Lay fails to show that this argument

*Allstate Insurance Co.*, we adopted the Restatement view that one must consider "the circumstances under which the proceedings are withdrawn" in deciding whether the withdrawal or abandonment of a civil suit constitutes a favorable termination. 174 Vt. 200, 203-04, 811 A.2d 148, 152 (2002) (citing Restatement (Second) of Torts § 674 cmt. j). Under this approach, "if the dismissal somehow indicates that the defendant is innocent of wrongdoing, it will be considered a favorable termination." *Id.* at 204, 811 A.2d at 151-52.

¶ 33. In a similar vein, when the underlying case is a criminal one, the Restatement provides that "[p]roceedings are 'terminated in favor of the accused' . . . only when their final disposition is such as to indicate the innocence of the accused." Restatement (Second) of Torts § 660 cmt. a. When a plea agreement is involved, the Restatement explains that "[a]lthough the accused by his acceptance of a compromise does not admit his guilt, the fact of compromise indicates that the question of his guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." *Id.* cmt. c; see also *Kent v. Katz*, 146 F. Supp. 2d 450, 461 (D. Vt. 2001) (predicting that Vermont Supreme Court would hold that a guilty plea to a lesser, unrelated offense cannot constitute "termination in favor of the accused for purposes of a later malicious prosecution claim"). This appears to be the general rule, and the rule followed by other jurisdictions.

¶ 34. Lay offers no compelling argument in support of a contrary rule, and the case on which he heavily relies, *Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001), is factually

___

was preserved. In his complaint, Lay alleged that the prosecution was in fact terminated in his favor. We conclude that this argument was waived, and we therefore do not address it. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); see also *In re S.B.L.*, 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) (explaining that appellant bears burden of demonstrating how the trial court erred warranting reversal, and Supreme Court will not comb the record searching for error); see also V.R.A.P. 28(a)(4) (stating that appellant's brief should explain what the issues are, how they were preserved, and what appellant's contentions are on appeal, "with citations to the authorities, statutes, and parts of the record relied on"). Lay also suggests, for the first time on appeal, that perhaps the trial court would have dismissed the obstruction of justice charges against him on speedy trial grounds. We do not address this argument because Lay fails to show it was preserved.

distinguishable. The *Kostrzewa* court recognized that, under Michigan law, "when a criminal proceeding is resolved pursuant to a plea bargain, this generally is not considered a termination of the proceedings in the plaintiff's favor." *Id.* at 643. Because the case was decided on the pleadings by the trial court, however, and the plaintiff's complaint contained no allegation that the charge was resolved by a plea agreement, the appeals court found insufficient evidence to support application of this rule.

■■■ ¶ 35. There is no such divergence from the general rule here, nor is there any suggestion that Lay was coerced into entering the plea agreement. His written waiver in the criminal case expressly provides otherwise. The undisputed facts here show that Lay bargained for the dismissal of the obstruction of justice charges, and the final disposition of the charges against Lay is not "indicative of innocence." *Kent,* 146 F. Supp. 2d at 461 (similarly concluding that where criminal proceedings against defendant ended in a conviction pursuant to a plea bargain, defendant could not establish that the proceedings terminated in his favor, even where defendant pled no contest to a lesser unrelated charge). We find no grounds to disturb the court's summary judgment ruling on Lay's malicious prosecution claim.

¶ 36. Lay next argues that the court erred in finding that Troidl acted consistently with 20 V.S.A. § 1923(b) in forwarding the IAU report to the State's Attorney's Office. He asserts that § 1923(b) must be read to require the head of the IAU to determine in all cases whether the internal investigation has turned up evidence of a crime. If the investigation has not turned up such evidence, Lay posits, then sending the report to the prosecutor could be negligence.

■■■ ■■■ ¶ 37. The plain language of § 1923(b) does not support Lay's interpretation. See *Tarrant v. Dep't of Taxes,* 169 Vt. 189, 197, 733 A.2d 733, 739 (1999) (where intent of the Legislature is clear from the plain language used, the Court must enforce the statute as written). The statute requires the head of the IAU to immediately report all allegations to the county's state's attorney unless he or she "makes a determination that the allegations do not include violation of a criminal statute." 20 V.S.A. § 1923(b). Troidl made no such determination here. To the contrary, Troidl noted Novoty's opinion that Lay's conduct may have violated two criminal statutes. This claim of error is without merit.

¶ 38. Finally, we turn to Lay's assertion that the court should have allowed him to engage in additional discovery before issuing its summary judgment decision. Lay maintains that in one of his interrogatories he sought to test the accuracy of the probable cause affidavit by obtaining all communications that described the offense stated in the affidavit. Lay asserts that the court should have given him a full opportunity to test the accuracy of the probable cause affidavit before issuing its summary judgment decision.

¶ 39. The trial court has discretion to limit discovery requests. See V.R.C.P. 26(b)(1). In this case, the trial court found at a September 2008 status conference that most of Lay's discovery requests were overbroad and asked that they be revised. As to the particular request cited above, the court found it irrelevant. As the State explained, the district court's decision on probable cause was based on Detective Roberts's affidavit, and the district court's probable cause decision spoke for itself. The court agreed with the State that the request should be denied, and Lay offers no compelling argument to show that the court abused its discretion in doing so.

¶ 40. Lay also asserts that the court should have required defendants to answer two other interrogatories before deciding as a matter of law that Lieutenant Troidl did not negligently refer the IAU report to the prosecutor. As discussed above, there is no legal basis for Lay's negligent referral argument, and there can therefore be no error in the denial of Lay's request. We have considered all of Lay's arguments and find them all without merit.

*Affirmed.*