Filed 12/05/24

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-05407

---

Allen Pigeon v. The State of Vermont, et al

---

## DECISION ON STATE'S MOTION TO DISMISS

This malicious prosecution and civil rights action arises from Plaintiff Allen Pigeon's April 2020 arrest and subsequent criminal prosecution in Franklin County, for which he alleges that no reasonable belief in probable cause existed at the time. Mr. Pigeon brings various claims against certain state officials and employees, including state troopers, prosecutors, and the former state attorney general, as well as one private citizen. He also alleges that the State of Vermont is vicariously liable for the actions of its employees and officials. The State Defendants move to dismiss pursuant to V.R.C.P. 12(b)(6).

### Alleged Facts

At 24 pages and 271 paragraphs, Mr. Pigeon's Complaint overshoots the "short and plain statement of the claim" targeted by V.R.C.P. 8. The answer to a long and complicated complaint, however, is not necessarily a long and complicated decision. Instead, the court provides only a brief summary of the core allegations below, with additional facts discussed later as necessary. These facts are alleged in the Complaint or appear in the Information and Affidavit of Probable Cause from the underlying criminal case, which are incorporated into the Complaint by reference. *See Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n. 4, 186 Vt. 605 (mem.). The court makes no determination as to their accuracy at this stage of the proceeding. *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514 ("On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor.").

On April 19, 2020, state troopers arrested and detained Mr. Pigeon after interviewing him at the St. Albans barracks. Following the interview, Sgt. Clark Lombardi prepared and signed an Affidavit of Probable Cause. Briefly, the affidavit alleged that Mr. Pigeon's son, Zachary Pigeon (a St. Albans

police officer at the time) had molested Mr. Pigeon's stepdaughter, McKenna Stone, as a child, and that Mr. Pigeon and Zachary had invaded McKenna's home and assaulted her two weekends prior, after McKenna's sister had told another police officer about the alleged molestation. Based on the affidavit, Franklin County Deputy State's Attorney Diane Wheeler charged Mr. Pigeon with Simple Assault (13 V.S.A. § 1023(a)(1)), Felony Obstruction of Justice (13 V.S.A. § 3015), Burglary (13 V.S.A. § 1201(c)(1)), Kidnapping—Bodily Injury or Fear (13 V.S.A. § 2405(a)(1)(C)), and Unlawful Restraint, Second Degree (13 V.S.A. § 2406(a)(3)). Mr. Pigeon was arraigned on April 20, 2020, and released on conditions. News of Mr. Pigeon's arrest was reported in the media.

In June 2020, the Vermont Attorney General's office took over the case, and investigated the charges further over the next several months. In December 2020, the State dismissed all charges against Mr. Pigeon without prejudice. The Attorney General issued a press release: "The State provided notice that it cannot meet the elements of the charged crimes beyond a reasonable doubt at this time." On November 14, 2022, the court expunged the charges and sealed the case. Zachary Pigeon was also eventually fully exonerated for the same alleged crimes.

The Parties

Mr. Pigeon has sued the following defendants:

- The State of Vermont

State Police
- John Bruzzi
- Ashley Farmer
- Clark Lombardi
- Michael Mattuchio
- Daniel R. Burrows
- Drew Cota
- Darren P. Annis
- Matthew Hill

Prosecutors
- Diane C. Wheeler, Esq. (Franklin County Depute State's Attorney)
- Linda A. Purdy, Esq. (Assistant Attorney General)
- Ultan J. Doyle, Esq. (Assistant Attorney General)
- Thomas J. Donovan, Jr., Esq. (former Vermont Attorney General)

Private Citizen
- Hazen Stone (McKenna Stone's father)

The Claims

Mr. Pigeon brings the following claims:

- Count 1: Malicious Prosecution (all individual defendants)
- Count 2: Assault & Battery (Diane Wheeler, all individual state police defendants, and Hazen Stone)
- Count 3: False Arrest (Diane Wheeler, all individual state police defendants, and Hazen Stone)
- Count 4: False Imprisonment (all individual defendants)
- Count 5: Defamation (all individual defendants)
- Count 6: Intentional Infliction of Emotional Distress (all individual defendants)
- Count 7: Respondeat Superior (State of Vermont)
- Count 8: Civil Conspiracy (Diane Wheeler, all individual state police defendants, and Hazen Stone)
- Count 9: Civil Rights Violations under 42 U.S.C. § 1983 (all individual defendants)
- Count 10: Failure to Intervene under 42 U.S.C. § 1983 (all individual state police defendants)

Discussion

All State Defendants move to dismiss pursuant to Rule 12(b)(6).[1] The State contends that all of its named employees are protected by sovereign, official, prosecutorial, or qualified immunity, and that the existence of probable cause is a complete defense to many of the claims. Additionally, it contends that Mr. Pigeon's claims for civil conspiracy, intentional infliction of emotional distress, and defamation are otherwise without merit.

Probable Cause

The State contends that the Complaint's allegations demonstrate that probable cause existed at the time of the arrest, and that this provides a complete defense. The absence of probable cause is an element of a malicious prosecution claim. "[T]o recover for malicious prosecution, plaintiff must prove that defendant initiated or continued the case without probable cause, that defendant acted with malice, and that the earlier case terminated in plaintiff's favor." *Bacon v. Reimer & Braunstein, LLP*, 2007 VT 57, ¶ 4, 182 Vt. 553 (citing *Anello v. Vinci,* 142 Vt. 583, 586–87 (1983)). Additionally, virtually all of Mr. Pigeon's other claims are also premised—directly or indirectly—on an alleged lack of probable cause. *See* Compl. ¶¶ 236, 239, 242, 246, 255, 263–64, 269.

Importantly, here, Sgt. Lombardi's affidavit of probable cause was confirmed by the prosecutor's filing of an Information in criminal court and the court's subsequent finding of probable cause. "The mere fact that a criminal tribunal found probable cause normally provides a presumption that probable cause existed in the context of a subsequent wrongful prosecution claim." *Lay v.*

---

[1] The sole private citizen defendant, Hazen Stone, has answered the Complaint and has not moved to dismiss.

*Pettengill*, 2011 VT 127, ¶ 22, 191 Vt. 141. This presumption "is rebuttable only if a plaintiff can demonstrate that the earlier finding of probable cause was based on misleading, fabricated, or otherwise improper evidence." *Id*. A plaintiff, however, cannot "merely plead the insufficiency of the evidence that was available to the criminal court at the time." *Id*. Thus, "[t]here must be a plausible suggestion that the finding of probable cause would not have been reached were it not for some irregularity or impropriety." *Id*.

Mr. Pigeon's attempt to rebut the presumption of probable cause fails. The following core facts formed the basis of the arrest:

- After being stopped for a DUI, McKenna Stone reported to state police that a few weeks prior, Mr. Pigeon and his son Zachary had entered her home at night, assaulted her, threw her down some stairs and off her porch, handcuffed her, and burned her back with a cigar. Compl. ¶¶ 41–46.

- When Ms. Stone was at the state police barracks, Detective Mattuchio observed several small scars across her back. Aff. of Probable Cause at 2 (Ex. A).

- State Police spoke with two individuals—Joey Vaillancourt and Jeremy West—who reported they had heard about the incident, and had seen burn marks on Ms. Stone's back. Aff. at 4–5 (Ex. A).

- Ms. Stone also reported the following to state police: that she was sexually abused by her stepbrother Zachary Pigeon starting when she was in fourth grade and continuing until she moved in with her father in eighth grade; that she had told her sister, Hailee Stone, about the abuse, who then told her boyfriend Jonathan Warner; that Mr. Warner was arrested for operating a car without a license by Zachary Pigeon in February 2020; that Mr. Warner told St. Albans police officers at that time that Zachary had sexually assaulted McKenna Stone when she was younger; that after that incident, she started receiving threatening messages and voicemails from Mr. Pigeon, who stated that he was going to slit her throat; and that she had deleted the voicemails. Aff. at 3 (Ex. A).

- State police confirmed that, according to a St. Albans police report, Zachary Pigeon had arrested Mr. Warner after a traffic stop on February 16, 2020, and transported him back to the St. Albans police station for processing. *Id*.

- On April 18, 2020, Det. Mattuchio and Det. Sgt. Lombardi spoke with Hailee Stone, who reported that she was with Mr. Warner when Zachary Pigeon arrested him in February, and that she had also advised another police officer on the scene that Zachary had molested her sister. Aff. at 5 (Ex. A).

- Later that same day, detectives interviewed Mr. Warner, who confirmed his February 2020 arrest by Zachary, and stated that while he was at the police station, he told Zachary that he had "heard a lot of things about him." *Id*.

- Also on April 18, state police interviewed Ms. Stone a second time, and had her draw a diagram of her residence and explain how the incident with Zachary and Allen Pigeon happened. Ms. Stone told the troopers that she had told her father "yesterday" "about the issues with Zachary and Allen." Aff. at 4.

- The same day, state police went to Ms. Stone's residence to gather evidence and photograph the scene. Troopers searched the firepit and found a black cigar tip that was photographed and obtained as evidence. This was consistent with Ms. Stone's earlier statement that she had located the cigar tip (that she believed was the one used to burn her) near her front steps, and threw it in her fire pit. Aff. at 5 (Ex. A).

- On April 19, state police interviewed Zachary Pigeon, who: confirmed that he had arrested Jonathan Warner about a month prior and that Hailee Stone was in the car at the time; denied ever having a sexual relationship with McKenna Stone; recanted his denial and admitted to having consensual sex with McKenna in 2018; denied smoking; stated that he and his father (Allen Pigeon) are very close; reported that he did not work the weekend of the alleged incident; stated that he stayed at home with his girlfriend the entire weekend of April 3rd, 4th, and 5th and "did not leave to go anywhere"; stated that at some point he and his father drove around Swanton looking at house at 10am but was unsure of the exact date; and denied that he ever went to McKenna's residence or threatened her. Aff. at 5–7 (Ex. A).

- On April 19, state police spoke with Allen Pigeon at the barracks. Mr. Pigeon said that he had not had contact with McKenna Stone in over a year and dislikes her, that he does not smoke, and that on Sunday April 5 at midmorning he picked up a gun safe at Tractor Supply and later went house hunting with Zachary. Aff. at 7–8 (Ex. A).

Unquestionably, probable cause existed at the time of the arrest based on these recitals. In summary, McKenna Stone reported the alleged assault and a potential motivation to suppress allegations of sexual abuse of McKenna by Zachary Pigeon; she described cigar burns as part of the assault, and detectives observed scars on her back; witnesses stated that they had also heard about the alleged incident and seen burn marks on McKenna's back; McKenna diagrammed her residence and explained where the cigar tip might be located; detectives located the cigar tip in the location indicated; Zachary Pigeon denied ever having a sexual relationship with McKenna before recanting that denial; and Zachary also stated that he was off-duty the weekend of the alleged incident. These facts demonstrate a reported crime, a complaining witness who made consistent statements to others, and the suspects' motivation and opportunity to commit the crime.

Mr. Pigeon contends, however, that probable cause was lacking because McKenna Stone was an unreliable witness and because Sgt. Lombardi's affidavit omitted or overlooked exculpatory evidence and other key facts. Pl.'s Opp'n at 7–26. This contention is meritless. Mr. Pigeon points to the facts that McKenna lied at the initial DUI stop about not drinking, was an "admitted alcoholic" who drank every night, had ADHD, drove drunk with an unsecured, loaded gun within arm's reach,

and was involved with a passionate family dispute with Allen Pigeon, who was foster parenting her daughter. Most of these facts have nothing to do with propensity to tell the truth. While lying about drinking at the DUI stop and the family dispute with Allen Pigeon certainly present reasons to exercise caution with respect to McKenna's claims about Allen and Zachary Pigeon—and would have provided fodder for cross-examination at trial—they do not negate the finding of probable cause. The police investigated these claims by interviewing multiple witnesses and viewing the alleged crime scene prior to arresting Allen.

Mr. Pigeon argues essentially that all witness statements are unreliable because they ultimately trace back to McKenna's. Those witness statements, however, demonstrate that McKenna made consistent statements about the alleged incident to others before reporting it to the police.

Mr. Pigeon further provides a list of facts that were omitted from the Affidavit of Probable Cause. These omissions, he contends, affect the affidavit's "integrity" and demonstrate "a lack of candor with the criminal court." Pl.'s Opp'n at 16–18. Bluntly, none of these facts come close to negating probable cause.

Mr. Pigeon also spills a great deal of ink detailing a number of so-called "irregularities" involved with the reporting of McKenna's DUI car crash, which he appears to cast as a grand conspiracy. Pl.'s Opp'n at 18–25. He takes issue with the fact that McKenna's father, Hazen Stone, called Sgt. Bruzzi on Bruzzi's personal cell phone to report McKenna's claims against Allen and Zachary Pigeon, and that Hazen Stone might also have been the first to report McKenna's DUI crash to authorities through an undisclosed call. Mr. Pigeon also complains that Trooper Farmer was "disingenuous" in not making clear that she knew that McKenna was the driver of the DUI crash before arriving on scene. It is not clear why it matters that these facts were omitted from the affidavit of probable cause, or how they would even remotely affect the finding of probable cause. There is certainly no requirement that such affidavits include every minute detail to pass muster. Mr. Pigeon's non-conclusory allegations fail to demonstrate that the finding of probable cause was based on any "misleading, fabricated, or otherwise improper evidence." *Lay*, 2011 VT 127, ¶ 22. Instead, his allegations "merely plead the insufficiency of the evidence that was available to the criminal court at the time"—which is exactly what our Supreme Court has said is not sufficient to rebut the presumption of probable cause. *Id*. Thus, there is no "plausible suggestion that the finding of probable cause would not have been reached were it not for some irregularity or impropriety." *Id*.

Mr. Pigeon further asserts that, even if probable cause existed at the time of his arrest, it ceased to exist at some point during the ensuing eight months as the continuing investigation turned up

evidence in his favor. *See generally* 52 Am. Jur. 2d Malicious Prosecution § 52 ("Probable cause to pursue a claim can be lost during the course of an action, and thereafter, liability for malicious prosecution may arise, even though the proceeding was commenced with probable cause, if the action is prosecuted after it later appears there is no probable cause.") (footnote omitted); Dobbs' Law of Torts § 588 (2d ed.) ("When liability is based upon continuance rather than initiation of the prosecution, probable cause must be judged on appearances at the time the accuser acts to continue the prosecution, as where he refuses to withdraw his complaint even after he has learned of the accused's innocence."). Thus, he argues, the prosecutors should have dropped the charges long before they eventually did so in December 2020. This assertion, too, is meritless.

On June 8, 2020, the Attorney General's office took over the case from the Franklin County State's Attorney's office, and Attorneys Donovan, Purdy, and Doyle directed the state police to conduct further investigation into the basis of the charges against Mr. Pigeon. This included obtaining search warrants to retrieve all the data in both Pigeons' cell phones and social media accounts, and DNA testing of the handcuffs seized from Zachary's residence. On July 15, 2020, the prosecutors learned of negative DNA results for the handcuffs. Depositions began in October 2020. On October 22nd, law enforcement obtained a forensic examination of Mr. Pigeon's cellphone data. This examination revealed that Mr. Pigeon never left McKenna threatening voicemails, that his cellphone last communicated with McKenna's in April 2019, and contained no evidence that his phone was near McKenna's home the night of April 4–5, 2020. In November 2020, the prosecutors ordered a forensic examination of McKenna's cellphone, which revealed that she lied about the timing that she went to sleep on the night of the alleged incident and never mentioned the incident that night or the next day to her boyfriend, even though they had texted all day on April 5th. At her deposition on December 14th, McKenna was hostile, refused to answer many questions, and contradicted her prior sworn statements. After two hours of questioning, she stormed out and refused to complete the deposition.

There is no indication that probable cause ceased to exist at some point during the timeline described above. It is true that, as the prosecutors continued their investigation and discovery in preparation for trial, certain investigative results were returned in Mr. Pigeon's favor. This did not defeat probable cause because they still had the complaining witness's testimony, though some of the investigative results could certainly affect the weight of that testimony. The prosecutors continued their due diligence until, after McKenna's deposition, they determined that they could not prove their case beyond a reasonable doubt; they then dropped the charges. This does not negate probable cause; rather, it appears to be an example of the criminal justice system working as it should. *See Coombs v. Hot*

*Springs Vill. Prop. Owners Ass'n*, 254 S.W.3d 5, 11 (Ark. Ct. App. 2007) ("We find nothing in this record constituting substantial evidence that the original probable cause was later undermined by the developing facts but the prosecution continued nonetheless.").

## Immunity

In any event, the prosecutors are entitled to immunity for their decision to continue with the charges until December 2020. "Judicial officers, including prosecutors, have absolute immunity from civil suits to the extent that the actions complained of are associated with the judicial phase of the criminal process and are within the general authority of the officer." *Muzzy v. State By & Through Rutland Cnty. State's Att'y*, 155 Vt. 279, 279 (1990). This protection "encompasses any act closely associated with litigation or potential litigation, but does not cover administrative . . . or investigative functions that are not a part of the judicial function." *Id.* (citations omitted). Thus, absolute immunity extends "to prosecutorial activities that concern, among other things, the decision whether to prosecute." *Id.* This immunity extends to Mr. Pigeon's federal claims: "the same absolute immunity [applies] under 42 U.S.C. § 1983 that the prosecutor enjoys at common law." *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).

Mr. Pigeon's core claim here is that the prosecutors should have dropped the charges against him earlier than they did based on the information discovered in the Attorney General's Office's follow-on investigation detailed above. The decision to continue or discontinue a prosecution is a core prosecutorial function, committed to a prosecutor's sole discretion. Because the acts complained of plainly fall within the scope of this function, the prosecutors here are protected by absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity").

Mr. Pigeon contends that the challenged actions are "investigative or administrative functions not covered" by absolute immunity. Pl.'s Opp'n at 29. Not so. While the prosecutors directed the police to investigate further the basis for the charges against Mr. Pigeon, these actions obviously did not "occur prior to the initiation of a prosecution." *Burns v. Reed*, 500 U.S. 478, 496 (1991). Moreover, these acts were not a "random 'fishing expedition,' " but rather "involved [] activit[ies] legally sanctioned as part of the investigative process, a process necessary to the effective operation of the prosecutors' office." *Levinsky v. Diamond*, 151 Vt. 178, 194 & n.7 (1989). Indeed, "a prosecutor . . . must be afforded reasonable means to reach the decision to prosecute without fear of legal retaliation." *Id.* at 194 n.7; *see also Blake v. Rupe*, 651 P.2d 1096, 1104 (Wyo. 1982) (quoting *Forsyth v.*

*Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979) (" 'To grant a prosecuting attorney absolute immunity over his decision to initiate a prosecution while subjecting him to liability for securing the information necessary to make that decision would only foster uninformed decisionmaking and the potential for needless actions.' ").[2]

Remaining Claims

Because the existence of probable cause and the prosecutors' official immunity is apparent on the face of the complaint, and because virtually all of Mr. Pigeon's claims are premised an alleged lack of probable cause and the prosecutors' decision to continue the prosecution, the State Defendants are entitled to dismissal of all claims. To the extent it is necessary to address certain claims individually, however, they are disposed of easily.

As to the assault and battery claims, the Complaint itself recognizes that lack of probable cause, in the context of the various individual Defendants' actions, is an essential element. Compl. ¶ 236 ("These actions were taken intentionally and without the reasonable belief that there was probable cause."). The discussion above therefore defeats that claim. Moreover, there is no indication in the Complaint that the arrest of Mr. Pigeon involved excessive force or was otherwise unprivileged. *See generally Simonelli v. Mt. Snow, Ltd*, No. 080111, 2013 WL 9348806, at *3 (Vt. Super. Ct. Mar. 07, 2013) (Carroll, J.); *Mayo v. Winn*, No. S0952-05 CnC, 2009 WL 8103582 (Vt. Super. Ct. May 14, 2009) (Pearson, J.).

As to the false arrest and imprisonment claims, once there has been a valid legal process—here, a prosecution commenced on probable cause—there can be no false arrest or imprisonment claim. *See* Dobbs' Law of Torts § 44 & n.2 (2d ed.):

> When the confinement takes place as a result of legal process such as a warrant for arrest, the plaintiff will seldom have an actionable claim for false imprisonment, since the legal process ordinarily furnishes a privilege or defense. If the legal proceeding against the plaintiff was itself brought without probable cause and for bad motives, the plaintiff may have a claim for malicious prosecution rather than false imprisonment.
>
> . . .
>
> Once a formal charge has been made and the plaintiff is confined by judicial order after arraignment, the false imprisonment is terminated and the claim for any remaining damages must ordinarily be one for malicious prosecution.

---

[2] To the extent the Attorney General's press release does not fall within the scope of absolute immunity, it clearly meets the standard for qualified immunity. *See O'Connor v. Donovan*, 2012 VT 27, ¶ 12, 191 Vt. 412.

As to the IIED claim, none of the alleged facts amount to "outrageous conduct" as contemplated by Vermont case law and the Restatement. *See Davis v. Am. Legion, Dep't of Vermont*, 2014 VT 134, ¶¶ 19–20, 198 Vt. 204; Restatement (Second) of Torts § 46 cmt. d (1965). As to defamation, Mr. Pigeon has failed to plead both: (1) a "false and defamatory statement," given the existence of probable cause; and (2) a "lack of privilege," given that the State Defendants (prosecutors and state troopers) made the alleged statements as part of their official duties. *See Skaskiw v. Vermont Agency of Agric.*, 2014 VT 133, ¶¶ 8–12, 198 Vt. 187.

As for the civil conspiracy claim, the analysis above makes clear that there is no actionable underlying tort, *see Davis v. Vile*, No. 2002-465, 2003 WL 25746021, at *3 (Vt. Mar. 2003) (unpub. mem.) ("[a]ssuming that there continues to be an independent cause of action for the tort of civil conspiracy," and citing cases from other states holding that civil conspiracy is not actionable in and of itself); Dobbs, The Law of Torts § 435 (discussing conspiracy under a treatise section titled "other bases for vicarious liability"), and even assuming that conspiracy were an independent tort, Mr. Pigeon has not pled an "illegal purpose" or "illegal means." *Catamount Radiology, P.C. v. Bailey*, No. 1:14-CV-213, 2015 WL 5089104, at *3 (D. Vt. Aug. 27, 2015) (quoting *Boutwell v. Marr*, 71 Vt. 1, 42 A. 607, 609 (1899)). The respondeat superior "claim" against the State similarly fails because Mr. Pigeon has pled no actionable underlying tort, and also because the State is protected by sovereign immunity here under the discretionary function exception to the Tort Claims Act. *See Ingerson v. Pallito*, 2019 VT 40, ¶¶ 11, 210 Vt. 341 ("the discretionary function exception often applies in the context of state investigations"); *Earle v. State*, 2006 VT 92, ¶¶ 22–23, 180 Vt. 284; *Searles v. Agency of Transp.*, 171 Vt. 562, 563–64 (2000); *see also Nieves Martinez v. United States*, 997 F.3d 867, 881 (9th Cir. 2021) ("Because [t]he investigation of crime involves policy judgments at the core of the executive branch[,] the nature of the agents' conduct at issue here clearly involves the type of policy judgment protected by the discretionary function exception.") (quotations omitted).

Order

The court grants the State Defendants' motion to dismiss. The remaining parties—Allen Pigeon and Hazen Stone—shall submit a proposed discovery schedule within 21 days.

Electronically signed pursuant to V.R.E.F. 9(d): 12/5/2024 8:52 AM

_____
Samuel Hoar, Jr.
Superior Court Judge